UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**PYJAI SAKATU YMPOKA**,

    Plaintiff,

v.

**UNITED STATES DEPARTMENT OF INTERIOR**, *et al.*,

    Defendants.

Case No. 1:24-cv-2000 (TNM)

## MEMORANDUM OPINION

Pro se prisoner Pyjai Ympoka is detained pending trial on murder charges in the Virgin Islands. He alleges that a host of government actors and his current defense counsel have conspired to violate his rights as a member of an indigenous group. Some Defendants move to dismiss.[1] Others have not responded to the Complaint. But regardless, Ympoka's allegations are so disconnected from reality that the Court lacks jurisdiction to entertain them. So the Court will grant in part the motions to dismiss from two sets of Defendants and sua sponte dismiss Ympoka's Complaint as to the remaining Defendants.

### I.

Ympoka's legal name is Jerome Wallace III. Andrews Mot. Dismiss, ECF No. 15, at 2. He is incarcerated in the Virgin Islands awaiting trial on murder charges. *See* Andrews Ex. 1, ECF No. 15-1 (listing his July 2020 arrest for "Murder in the First Degree"); *People of the Virgin Islands v. Jerome Wallace*, SX-2020-CR-00163 (V.I. Super. Ct.).

---

[1] Because Ympoka is pro se, the Court entered orders under *Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988), for both motions to dismiss. ECF Nos. 8 and 16.

Ympoka describes the situation differently. He protests that he is "currently in forced detention" in the Virgin Islands, despite never having "agreed to" be subject to the laws of the United States. Compl., ECF No. 1, at 2. As a member of the "Maipuri Arauan Nation of the Americas," he contends that he is not a citizen of the United States and "has never signed any agreement with" the United States to "relinquish [his] rights as a natural born Arawak." *Id.* So he "demands freedom from th[is] forced identity in violation of international protections, which forbid[] piracy, human trafficking, and apartheid." *Id.*

Much of Ympoka's Complaint invokes the Alien Tort Statute, which lets non-citizens bring suit for torts "committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. His claims are diverse, ranging from "Environmental Racism" to "Ethnic Cleansing," and from "land theft" to "piracy." Compl. at 4–6. But the overarching theme is Ympoka's belief that the United States and its actors are "systemically forcing fraudulent identity" on him so they can improperly detain him. Compl. at 5. As a remedy for these many wrongs, he "demands to know the true nature and jurisdiction of the tribunal" that is "committing piracy and human trafficking against" him, plus over $500 million in damages. Compl. at 23.

Ympoka names a long list of Defendants including the United States, various federal agencies and officials, the Virgin Islands and a collection of its officials, and the judge in his murder trial—the Hon. Alphonso Andrews. Ympoka also alleges ineffective assistance of counsel against Ronald Russell, his current defense counsel. His primary concern is that his lawyer has excluded Ympoka's non-lawyer "tribal advocate" from being involved with Ympoka's defense strategy. Compl. at 21–22, 29–30. The tribal advocate wrote Russell a letter protesting Ympoka's treatment, and then sought dismissal for lack of jurisdiction in Ympoka's

2

criminal case. Compl. Exs., ECF No. 1-1, at 56–65. The court promptly struck the motion and issued Ympoka's associate a cease-and-desist order. *Id.* at 67–69.

In this case, the United States moved to dismiss for all federal Defendants. Gov't Mot. Dismiss, ECF No. 7. It says the Court lacks jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure because Ympoka's Complaint is "patently insubstantial." *Id.* at 10. The Government further urges dismissal under Rule 8, which requires pleadings to include "a short and plain statement" outlining the Court's jurisdiction and the plaintiff's entitlement to relief. *Id.* at 9. Finally, the Government says the Complaint fails to state a claim under Rule 12(b)(6). *Id.* at 14–16.

Judge Andrews also moves for dismissal. *See* Andrews Mot. Dismiss. His defenses run the gamut of Rule 12. *See id.* at 1. He alleges a lack of both personal and subject-matter jurisdiction, improper venue, insufficient service of process, and failure to state a claim. *See id.*

The remaining Defendants—Ympoka's defense counsel, the Virgin Islands, and various officers of the Virgin Islands—have not responded to the Complaint or entered notices of appearance. Ympoka moves for default judgment against them. Mots. for Default J., ECF Nos. 19 and 23. All motions are ripe for decision.

## II.

"Federal courts are courts of limited jurisdiction . . . [and it] is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The plaintiff bears the burden of showing that a federal court has jurisdiction. *See id.* "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). When assessing jurisdiction, a court can look

beyond the complaint and "consider materials outside the pleadings." *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

Courts lack subject matter jurisdiction over complaints that are "patently insubstantial, presenting no federal question suitable for decision." *Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir. 2009) (cleaned up). Claims are patently insubstantial if they are "essentially fictitious" or otherwise "so attenuated and unsubstantial as to be absolutely devoid of merit." *Best v. Kelly*, 39 F.3d 328, 330–31 (D.C. Cir. 1994) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974)). Examples include allegations that advance "bizarre conspiracy theories," "fantastic government manipulations of [someone's] will or mind," or "supernatural intervention." *Id.* at 330.

More, courts have an independent obligation to screen complaints from prisoners who are suing the government or government officials. *See* 28 U.S.C. § 1915A. "On review, the court shall" dismiss "any portion of the complaint" if it is "frivolous." *Id.* § 1915A(b)(1). Review and dismissal under § 1915A must be done sua sponte even if the defendant has not yet responded to the complaint. *See Davis v. Dist. of Columbia*, 158 F.3d 1342, 1348 (D.C. Cir. 1998).

When evaluating pro se filings, courts must be mindful that any "document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Still, even pro se plaintiffs must adequately plead their complaints to avoid dismissal. *Yellen v. U.S. Bank, Nat'l Assoc.,* 301 F. Supp. 3d 43, 47 (D.D.C. 2018).

### III.

Ympoka puts forward a baseless theory that being part of a made-up indigenous group is a get-out-of-jail-free card that halts even a murder prosecution in its tracks. His Complaint is

"essentially fictitious" and so "devoid of merit" that the Court lacks jurisdiction under Rule 12(b)(1). *Best*, 39 F.3d at 330–31. His ineffective assistance of counsel claim has additional jurisdictional deficiencies too. Even if the Court did have jurisdiction, the screening requirement in 28 U.S.C. § 1915A would still require dismissal because Ympoka's claims are frivolous.

**A.**

Ympoka's Complaint is difficult to parse, but his basic theory seems to be that he is beyond the reach of the United States because of his membership in the Maipuri Arauan Nation. *See* Compl. at 2. While many of his allegations are nebulous—"Environmental Racism," "land theft under covert means," "Destruction of safe and productive existence"—Ympoka repeatedly takes aim at his "forced racial and citizenship designation." Compl. at 5. So as best the Court can discern, he is alleging that the Virgin Islands is improperly characterizing him as a citizen and relying on his citizenship to exert criminal jurisdiction over him.

There are many problems with this theory, not the least of which is that the Maipuri Arauan Nation is a recently formed organization that carries no legal significance. The group was created in 2020 and its founding document purports to herald the "unification and independence" of a collection of "Americas aboriginal people." Compl. Exs. at 4, 5. Ympoka may, of course, self-identify however he chooses. But labeling himself an "Arawak American inhabitant of the Antilles' [Virgin Islands] territory of AyeAye," Compl. at 7, does nothing to divest him of United States citizenship or shield him from criminal prosecution in the Virgin Islands. After all, the "[l]aws of the United States apply to all persons within its borders. Even if [Ympoka] were not a citizen of the United States . . . he would be obliged to respect the laws of this nation." *United States v. James*, 328 F.3d 953, 954 (7th Cir. 2003).

Nor does Ympoka's membership in the Maipuri Arauan Nation make him an "alien" for the jurisdictional purposes of the Alien Tort Statute. 28 U.S.C.§ 1350; *see Yousuf v. Samantar*, 552 F.3d 371, 375 n.1 (4th Cir. 2009), *aff'd and remanded*, 560 U.S. 305 (2010) ("According to the plain statutory language, one precondition for subject-matter jurisdiction to be conferred under the ATS is that suit be filed by an *alien,* not a citizen."). Instead, the record shows that Ympoka is a United States citizen born in the Virgin Islands. Andrews Ex. 1 (listing "St. Croix" in the Virgin Islands as his place of birth); 8 U.S.C. § 1406(b) ("All persons born in the Virgin Islands of the United States . . . on or after February 25, 1927, . . . are declared to be citizens of the United States at birth."). In short, he has no colorable basis to claim that his membership in the Maipuri Arauan Nation immunizes him from criminal prosecution for allegedly murdering someone in the Virgin Islands.

Ympoka's argument is a different ethnic flavor of the oft-dismissed claims of "Moorish" citizens. These plaintiffs have made similar frivolous claims that an unrecognized aboriginal status prevents the United States or a state within it from criminally prosecuting or detaining them. *See, e.g.*, *Williams v. Biden*, 2024 WL 3534705, at *1 (D.D.C. July 24, 2024) (dismissing as "inherently frivolous" the allegations of a prisoner who claimed he was a "Moorish American National" "beyond the reach of" state criminal laws); *El Bey v. New Jersey*, 2014 WL 4197572, at *1 (D.D.C. Aug. 20, 2014) (dismissing as "patently frivolous" a pro se plaintiff's claims that his status as an "aboriginal Indigenous Moorish-American" prevented a state from detaining him on criminal charges); *United States v. Toader*, 409 F. App'x 9 (7th Cir. 2010) (rejecting the claim from a "Moorish National Citizen" that federal courts lacked criminal jurisdiction over him). Ympoka uses different labels, but his legal theory remains just as hollow and warrants the same outcome.

The rest of Ympoka's Complaint is no better. It serves up a disjointed smorgasbord of meaningless legal incantations. He invokes the Pope, declaring that "the Doctrine of Discovery and the Doctrine of Slavery were denounced, abolished, and rescinded by Pope John Paul in 2009." Compl. at 7. He references an Executive Order that, according to Ympoka, "describe[s]" "unlawful possession of human beings to be used as human capital." Compl. at 4. In reality, the Order created a commission to study capital budgeting and it lacks the nefarious import Ympoka assigns to it. *See* Exec. Order No. 13037, 62 Fed. Reg. 10185 (March 3, 1997). And he protests that the United States' acquisition of the Virgin Islands in 1916 was "an act of international piracy and human trafficking" in violation of international law. Compl. at 9. It is against this backdrop that he repeatedly accuses Defendants of conspiring to deprive him of his indigenous rights. *See, e.g.*, Compl. at 19 (accusing the United States and the Governor of the Virgin Islands of conspiring to "force [him] to accept and adhere to, unlawful standards of life").

Ympoka's claims are "absolutely devoid of merit." *Best*, 39 F.3d at 331. Much of his Complaint is barely coherent, and the facts he puts forward live comfortably in the realm of the "essentially fictitious." *Id.* at 330. The Complaint also includes a classic hallmark of patent insubstantiality—a sweeping government conspiracy to commit "piracy and human trafficking" against him, complete with a Racketeer Influenced and Corrupt Organizations ("RICO") Act claim against his defense counsel and Judge Andrews. *See* Compl. at 23, 25, 30, 31. The Court must dismiss Ympoka's Complaint because it lacks jurisdiction over his patently insubstantial claims under Rule 12(b)(1). And even if the Court did have jurisdiction, it would dismiss Ympoka's Complaint as frivolous under the screening requirement in 28 U.S.C. § 1915A.

**B.**

Ympoka's ineffective assistance of counsel claim also has other jurisdictional deficiencies. He relies on the Sixth Amendment to bring this challenge as part of his efforts to end his incarceration. *See* Compl. at 29–30. At best, the Court could construe this as a habeas petition under either 28 U.S.C. § 2241 or § 2254. *See generally* Brian R. Means, *Federal Habeas Manual* § 1:34 (June 2025) (explaining that § 2254 applies when a "person is in custody pursuant to the *judgment* of a state court," while § 2241 applies when a person "is in custody pursuant to something *other than a judgment* of a state court" including "pre-trial detention"). But Ympoka does not explain how this Court, situated in Washington, D.C., has jurisdiction under either statute to review the ongoing detention of a criminal defendant in the Virgin Islands. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("[F]or core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."); *Callwood v. Enos*, 230 F.3d 627, 633–34 (3d Cir. 2000) (explaining that Congress has given the District Court of the Virgin Islands the power issue habeas writs).

More, the Court would abstain from hearing Ympoka's ineffective assistance of counsel claim even if it could. *See Younger v. Harris*, 401 U.S. 37, 43 (1971) (discussing the "longstanding public policy against federal court interference with state court proceedings"). Under the *Younger* doctrine, "a federal court must abstain [from interfering] when there is an ongoing state proceeding[2] . . . which implicates important state interests and provides an adequate opportunity to raise federal defenses." *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 192 (1st Cir. 2015).

---

[2] "*Younger* applies in the context of a territory's proceedings as well," including in the Virgin Islands. *Kendall v. Russell*, 572 F.3d 126, 130 n.3 (3d Cir. 2009).

Ympoka's situation does not warrant federal interference. He is the defendant in an ongoing territorial murder case, and the Virgin Islands has a strong interest in prosecuting murder charges. *See Younger*, 401 U.S. at 51–52 (states have an interest in "carrying out the important and necessary task of enforcing . . . laws against socially harmful conduct"). And not only *can* Ympoka raise his Sixth Amendment claim in a Virgin Islands court, but he *must* do so before bringing it via a habeas petition in federal court. *See* 28 U.S.C. § 2254(b)(1)(A) (requiring a federal habeas applicant in state custody to first "exhaust[] the remedies available in the courts of the State"); 5 V.I.C. § 1303 (giving the Superior Court of the Virgin Islands the power to grant writs of habeas corpus).

Even if the Court were to read the allegations against Russell as something else—a tort claim, perhaps—the Court lacks personal jurisdiction. Russell is not local, so the Court must look to Washington, D.C.'s long-arm statute for jurisdiction. *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013). The long-arm statute "provide[s] jurisdiction to the full extent allowed by the Due Process Clause" so the analysis collapses "into a single" constitutional inquiry. *Id.* Thus, for personal jurisdiction, Ympoka needs to show that Russell has "minimum contacts" with this forum and has "purposefully availed himself of the privilege of conducting activities within [Washington], thus invoking the benefits and protections of its laws." *Id.* (cleaned up). But Ympoka gives no indication his defense counsel has even the slightest ties here. Russell is a lawyer in the Virgin Islands, appearing in a Virgin Islands court to represent a Virgin Islands client charged with crimes under Virgin Islands law. If Russell has any connection to Washington, Ympoka has not identified it. These deficiencies add yet another layer onto the reasons this Court lacks jurisdiction over Ympoka's claims.

## IV.

For these reasons, the Court will grant in part[3] the Government's Motion to Dismiss and Judge Andrews's Motion to Dismiss. The Court will also deny Ympoka's two Motions for Default Judgment and dismiss his Complaint as to all Defendants without prejudice. A separate Order will issue today.

Dated: July 21, 2025                                         TREVOR N. McFADDEN, U.S.D.J.

---

[3] The Government and Judge Andrews both moved for dismissal with prejudice, but the Court will dismiss without prejudice. *See Kasap v. Folger Nolan Fleming & Douglas*, Inc., 166 F.3d 1243, 1248 (D.C. Cir. 1999) (explaining that a dismissal for lack of jurisdiction must be done without prejudice because it is not a decision on the merits).